**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **AMERICAN CARGO LOGISTICS,** | : | **CIVIL ACTION** |
| **INC., CAVALIER CARGO GROUP,** | : | |
| **INC., 1ST COAST CARGO, INC.** | : | |
| | : | **NO. 24-2300** |
| **v.** | : | |
| | : | |
| **PILOT AIR FREIGHT, LLC,** | : | |
| **MAERSK LOGISTICS & SERVICES** | : | |
| **USA, INC.** | : | |

## AMENDED MEMORANDUM[1]

**KEARNEY, J.**                                                                 **February 6, 2025**

A businessperson seeking to become involved in the freight transport business formed two businesses to work as franchisees with responsibilities in limited geographic areas for a larger freight company operating throughout the United States and Western Europe. His two businesses would manage this transport and often hire other companies (known as "cartage vendors") who locally transported goods to his companies' warehouses for further transport.

His two franchise businesses signed extensive Franchise Agreements in 2011 with the larger freight company. His two franchise businesses agreed there is no third-party beneficiary to their Franchise Agreements with the company. The relationship soured over a decade later and the two franchise businesses sued the larger freight company. One of the cartage vendors, which is owned by the same businessperson who owns the two franchise businesses, also seeks damages as a third-party beneficiary of one of the 2011 Franchise Agreements. But the signing parties expressly agreed they did not intend a third-party beneficiary. And there is no competent evidence this unambiguous agreement excepted this cartage vendor nor other evidence the parties agreed to the Franchise Agreements specifically to benefit this cartage vendor. We find no genuine issue of

material fact precluding the entry of partial summary judgment dismissing the cartage vendor's third-party beneficiary claims.

## I.    Undisputed Facts[2]

Pilot Air Freight, LLC in Delaware County arranges and manages the movement of goods through rail, air, land, and sea from region to region in the United States and Western Europe.[3] It managed its business through a franchise system where independent businesses benefitted from the Pilot reputation and business model in an exclusive franchise relationship with Pilot in a limited region. Businesses seek to work with Pilot Freight as local franchisees responsible for accepting and transporting products in a defined geographic area. These independent businesses and Pilot confirm their respective obligations through a franchise agreement.

Our issue today arises from Pilot's franchise relationships begun in March 2011 with American Cargo Logistics, Inc. (responsible for Southern Georgia and Northern Florida) and with Cavalier Cargo Group, Inc. (responsible for Northern North Carolina and large portions of Virginia).[4] Businessperson Matt Loux owns both American Cargo and Cavalier Cargo.[5] Both American Cargo and Cavalier Cargo use "cartage vendors" to transport freight to and from their warehouses.[6] Mr. Loux also owns 1st Coast Cargo which performs this cartage vendor service for American Cargo in the Florida and Northern Georgia region.[7]

*Pilot's 2011 Franchise Agreements with American Cargo and Cavalier Cargo.*

American Cargo and Cavalier Cargo separately entered into substantially identical franchise agreements with Pilot on March 28, 2011.[8] Our limited focus today is whether Pilot owes obligations to 1st Coast Cargo as a third-party beneficiary under these franchise agreements.

We begin with the material language in the March 28, 2011 Franchise Agreements affecting our limited review:

- American Cargo and Cavalier Cargo agreed to certain covenants including they would not own, maintain, operate, engage in, be employed by, provide assistance to, or have interest in (as owner or otherwise) a freight transportation business or a business offering services or products which are the same as or similar to the services and products being offered by them through their Franchise Agreement unless Pilot approved;[9]

- The parties agreed their Franchise Agreements did not confer any rights or remedies upon anyone other than American Cargo, Cavalier Cargo, and Pilot (along with its officers, directors, shareholders, agents, and employees).[10]

***The parties renew the Franchise Agreements ten years later incorporating side letters.***

Pilot's owners sold the Pilot business to two private equity companies in 2016.[11] The new private equity owners began to buy back Pilot stations from franchisees but, for those franchisees unwilling to sell, the new owners agreed to honor obligations under the franchise agreements.[12] Mr. Loux chose not to sell American Cargo and Cavalier Cargo back to Pilot.

American Cargo and Pilot entered into an Extension Agreement on March 24, 2021 to renew the Franchise Agreement for an additional ten-year term.[13] The recitals in the Extension Agreement between American Cargo and Pilot confirmed 2011 side letters.[14] The parties referred to three attached March 28, 2011 side letters.[15] The first side letter confirms Pilot's approval of American Cargo's ownership and operation of 1st Coast Cargo as a provider of warehouse storage and cartage services to area businesses, freight forwarders, and other transportation companies in Northern Florida and Southern Georgia.[16]

*The relationships sour leading to litigation.*

The private equity company owners of Pilot sold the business in May 2022 to Maersk Logistics & Services USA, Inc.[17] Pilot, through new owners Maersk, began to rebrand Pilot-owned locations as Maersk locations.[18]

American Cargo, Cavalier Cargo, and 1st Coast Cargo sued Pilot and Maersk in May 2024.[19] 1st Coast Cargo seeks remedies in contract and tort as an alleged third-party beneficiary of the 2011 Franchise Agreement notwithstanding the parties' agreement there is no third-party beneficiary. American Cargo, Cavalier Cargo, and 1st Coast Cargo claimed Maersk and Pilot began to "purposely destroy" the Pilot brand and replace it with the Maersk brand; directed sales opportunities away from franchisees in violation of the franchise agreements; refused to promote the Pilot brand or account for advertising money; refused to provide franchisees with updated operating documents or new information; and used the Pilot system for Maersk's own profit at the expense of Pilot franchisees.[20] Pilot and Maersk denied these allegations.[21]

American Cargo, Cavalier Cargo, and 1st Coast Cargo later alleged:

- American Cargo and Cavalier Cargo, as franchisees, seek declaratory judgment Pilot breached the franchise agreements, a breach of contract claim against Pilot, and a tortious interference with contract and prospective economic relationships against Maersk;[22]

- American Cargo asserts a claim under the Florida Deceptive and Unfair Trade Practices Act against Pilot and Maersk;[23]

- Cavalier Cargo asserts a claim under the Virginia Retail Franchising Act against Pilot;[24]

- 1st Coast Cargo asserts a breach of contract claim against Pilot, a tortious interference with contract claim against Maersk for interfering with the Franchise Agreements, and a violation of the Florida Deceptive and Unfair Trade Practices Act against Pilot and Maersk.[25]

Pilot did not plead an affirmative defense of waiver based on the parties' express intent to not recognize third-party beneficiaries of the Franchise Agreements. It did plead, among other defenses, 1st Coast Cargo could not state a claim as a third party beneficiary as a matter of law.[26]

## II. Analysis

Pilot and its owner Maersk seek partial summary judgment on claims asserted by 1st Coast Cargo as an alleged third-party beneficiary for breach of the American Cargo-Pilot Franchise Agreement and tortious interference with the Franchise Agreement.[27] Pilot and Maersk argue 1st Coast Cargo is not a third-party beneficiary of the Franchise Agreement because 1st Coast is neither a party to the agreement nor an intended beneficiary of the Franchise Agreement as the parties in Section 25.3 specifically disclaimed the rights of any third-party beneficiary. 1st Coast Cargo counters we should not give effect to Section 25.3 of the Franchise Agreement.[28]

We begin with governing Pennsylvania law recognizing both express third-party beneficiaries and intended third-party beneficiaries.[29] Seventy-five years ago, the Pennsylvania Supreme Court held both parties to a contract must express an intent to benefit the third party in the contract itself to allow an entity claiming it is a third-party beneficiary of the contract to have standing to recover on the contract.[30] Over thirty years later, the Pennsylvania Supreme Court carved out an exception to this general rule by adopting Section 302 of the Restatement (Second) of Contracts allowing a third-party beneficiary to assert it is an "intended beneficiary" even in the absence of contractual language showing the parties' mutual intent to benefit a third party.[31] The Pennsylvania Supreme Court adopted Section 302 as "a guide" for analysis of third-party beneficiary claims under Pennsylvania law.[32] It provides:

> (1) ***Unless otherwise agreed*** between promisor and promisee, a beneficiary of a promise is an intended beneficiary if recognition of a right to performance in the beneficiary is appropriate to effectuate the intention of the parties and either

(a) the performance of the promise will satisfy an obligation of the promisee to pay money to the beneficiary; or

(b) the circumstances indicate that the promisee intends to give the beneficiary the benefit of the promised performance.

(2) An incidental beneficiary is a beneficiary who is not an intended beneficiary.[33]

So, for over the last thirty years, a non-party to a contract may become a third-party beneficiary under Pennsylvania law "only where both parties to the contract express an intention to benefit the third party in a contract itself … *unless*, the circumstances are so compelling that recognition of a beneficiary's right is appropriate to effectuate the intention of the parties, and the performance satisfies an obligation of the promisee to pay money to the beneficiary or the circumstances indicate that the promisee intends to give the beneficiary the benefit of the promised performance."[34] The Pennsylvania Supreme Court directs this exception applies to a "narrow class of third party beneficiaries" if an entity claiming third-party beneficiary status "show[s] that [it] meet[s] the requirements of Section 302."[35]

In applying Section 302, we first require circumstances surrounding the contract be "so compelling" to make recognition of a beneficiary's right "appropriate to effectuate the intent" of the contracting parties.[36] Pennsylvania law then requires the entity claiming third-party beneficiary status "fall[] within one of two categories under Section 302(1)(a) and (b)—creditor and donee beneficiaries."[37] If the two steps of the Section 302 test are met, the beneficiary is an intended beneficiary "unless otherwise agreed" between the contracting parties.[38]

The "unless otherwise agreed" language of Section 302 is construed by Pennsylvania courts to mean contracting parties may expressly disclaim an intention to create third-party beneficiaries. Under Pennsylvania law, a contract with an express disclaimer "cannot also be read as expressly evincing an intent to create beneficiaries."[39] And under Section 302's intended

beneficiary theory, intended beneficiary status arises "only if the parties have not 'otherwise agreed.'"[40]

### A.  The parties expressly disclaimed third-party beneficiaries.

American Cargo and Pilot agreed in Section 25.3 of the Franchise Agreement "nothing in this Agreement is intended, nor shall be deemed, to confer upon any person or legal entity … any rights or remedies under or by reason of this Agreement" except as "expressly provided to the contrary" in the Agreement and to any person or entity other than American Cargo, Pilot, and Pilot's officers, directors, shareholders, agents, and employees, and successors and assigns "contemplated by Section 14" of the Agreement. [41]

Under Pennsylvania law, we determine the parties' intent as expressed in the contract's language and give effect to the contract's plain meaning if the language is clear and unambiguous.[42] We do not assume the parties carelessly chose language in the contract or were ignorant of the meaning of the chosen language.[43] We cannot "imply contracts at odds with their language."[44] The plain meaning of Section 25.3 disclaims third-party beneficiary rights. Such contractual disclaimers are enforced by Pennsylvania courts and federal courts in this Circuit applying Pennsylvania law.[45]

For example, in *Medevac MidAtlantic, LLC v. Keystone Mercy Health Plan*, Judge Rufe dismissed the third-party beneficiary claim of a subcontractor under a contract between a health plan and Pennsylvania's Department of Public Works containing a disclaimer provision. Judge Rufe explained Pennsylvania courts ordinarily give effect to disclaimers when considering a third-party beneficiary claim under Section 302 of the Restatement and Pennsylvania courts appear to disregard such express disclaimers "only where the purported third-party beneficiaries were the sole or primary beneficiaries of the contract's performance."[46] In those "rare" circumstances,

"recognizing the intended beneficiary is necessary to give effect to the intent of the parties to provide that benefit."[47]

American Cargo and 1st Coast Cargo did not adduce competent evidence 1st Coast Cargo is "the sole or primary beneficiar[y]" of the American Cargo-Pilot Franchise Agreement or recognizing 1st Coast Cargo is the intended beneficiary "necessary to give effect to the intent" of American Cargo and Pilot to receive the benefits of the Franchise Agreement. The side letter approving American Cargo's ownership and operation of 1st Coast Cargo does not evidence such an intention.

More recently, the Pennsylvania Superior Court in *PennEnergy Resources, LLC v. Winfield Resources, LLC* reversed a trial judge's order confirming an arbitration award on a third-party beneficiary's tort claim, finding a purchase and sale agreement between two contracting parties explicitly disclaimed a limited partnership of one of the parties is a third-party beneficiary under the agreement.[48] The court explained while parties to a contract are free to explicitly agree to a provision creating third-party beneficiary rights, the parties may also "explicitly state that a contract is *not* intended to create third-party beneficiary rights or identify the specific persons who do not hold these rights, as noted in Section 302(a) of the Restatement (Second) of Contracts."[49]

We are further guided by Judge Scott's analysis four months ago in dismissing claims brought by individuals and a putative class of bank customers for damages arising out of a data breach of NCB Management Services.[50] NCB moved to dismiss breach of contract claims brought by alleged third-party beneficiaries of NCB's contract with the defendant banks. Judge Scott concluded contracts between NCB and the banks expressly disclaimed an intent to create third-party beneficiary status "on any third party" and the parties "otherwise agreed" to disclaim third-party beneficiaries for purposes of Section 302.[51] Judge Scott explained the "[u]nless otherwise

agreed" language in Section 302(1) of the Restatement is interpreted by courts in this Circuit and outside our Circuit to mean parties to a contract are permitted to expressly disclaim the existence of intended third-party beneficiaries and exclude third parties from invoking the benefits of the agreement.[52]

American Cargo and Pilot agreed to Section 25.3 in the Franchise Agreement expressly disclaiming third-party beneficiaries. We will not read this provision out of the Franchise Agreement based on arguments made by 1st Coast Cargo. We disagree the side letter evidences both American Cargo's and Pilot's intention to make 1st Coast Cargo a beneficiary of the Franchise Agreement.[53] The language of the March 28, 2011 side letter does not make 1st Coast Cargo a third-party beneficiary of the Franchise Agreement. The side letter instead somehow approves American Cargo's ownership (even though the parties swear Mr. Loux owns 1st Coast Cargo) and operation of 1st Coast Cargo as a warehousing storage and cartage services provider—something American Cargo could not do under Section 17.2.3 of the Franchise Agreement absent Pilot's written approval. There is no adduced evidence to support 1st Coast Cargo's argument Pilot signed the side letter "so that 1st Coast could continue to receive all of the benefits that would be created for it by the franchise relationship and that the parties knew would be created for it."[54]

And we disagree the deposition testimony of Pilot's corporate designee, Gordon Branov, evidences Pilot's intent in 2011 to confer the benefit of the Franchise Agreement on cartage agents like 1st Coast Cargo. Pilot's Mr. Branov agreed "one of the benefits that franchisees got from being a Pilot franchisee was the ability to do this cartage work" and when Pilot entered into the Franchise Agreement with American Cargo in 2011 it "knew that franchisees who had their own cartage companies would be receiving the benefit of getting to do cartage work that was created by the Pilot franchise relationship."[55] We do not read this testimony as creating a fact issue Pilot intended,

by approving American Cargo's (notwithstanding Mr. Loux's) ownership and operation of 1st Coast Cargo in the side letter, to confer the benefits of the Franchise Agreement on 1st Coast Cargo. Mr. Branov is stating the obvious; companies working with the franchisee (including those owned by related parties) will benefit from having more work. This maxim is true regardless of the nature of the side company. Employees of the side company benefit from more work. A landlord for the cartage agent will benefit. Suppliers to the side company benefit. The local authorities presumably get paid more in taxes and business fees. Restaurants and shops near the side company benefit when the side company has more workers. But none of these tangential relationships can rise to the level of a party contemplated by American Cargo and Pilot when they signed the Franchise Agreement in 2011.

We are also not persuaded by 1st Coast Cargo's argument it is exempt from the third-party beneficiary disclaimer as an agent of *Pilot*. The parties in Section 25.3 disclaim third-party rights of any person or entity other than American Cargo, Pilot, and Pilot's "officers, directors, shareholders, [and] agents …"[56] American Cargo and 1st Coast Cargo swore to the allegations in their amended Complaint including Pilot recognized 1st Coast Cargo as the cartage agent of American Cargo, not Pilot.[57] There is no allegation in the amended Complaint 1st Coast Cargo is an agent of Pilot. American Cargo and Pilot signed the Franchise Agreement in March 2011 and an Extension Agreement in March 2022.

We are also not persuaded by 1st Coast Cargo's cite to a November 11, 2022 email exchange between two Pilot employees not involved in the negotiating the Franchise Agreement over eleven years earlier or the extensions a year earlier.[58] A November 2022 email between two employees without demonstrated knowledge of the 2011 relationships does not show an agency relationship at the time of contracting in 2011. Under Pennsylvania law, both parties to a contract

must intend to create a third-party beneficiary contemplated at the time of contracting.[59] An email exchange in 2022, eleven years after execution of the Franchise Agreement, does not meet this standard.

We are not persuaded by 1st Coast Cargo's arguing we should not give effect to Section 25.3 because in some instances "courts" decline to enforce a disclaimer. 1st Coast Cargo cites two cases wholly distinguishable. In *Lim v. Rajan*, Judge Bartle addressed a third-party beneficiary claim on a motion to dismiss, not a motion for summary judgment like we face today.[60] Mr. Lim sued STV Networks and others for breach of a sales agreement between Mr. Lim's employer and STV Networks. STV moved to dismiss Mr. Lim's breach of contract claim because he was not a party to the contract. Judge Bartle explained where a contract has express language disclaiming third-party beneficiary rights, Pennsylvania courts usually decline to recognize such rights.[61] Surveying Pennsylvania law, Judge Bartle cited Judge Rufe's decision in *Medevac MidAtlantic* enforcing a contractual disclaimer and a 1995 decision by Judge Weiner denying summary judgment on a third-party beneficiary issue.[62] In Judge Weiner's *State Farm* analysis, plaintiff contracted to purchase a parcel of land from the defendant seller. As part of the purchase, seller contracted with an environmental services company to perform an environmental assessment of the property to be sold. The contract between the seller and the environmental services company contained an express disclaimer of third-party rights. The environmental services group failed to discover chemicals in the soil. The buyer sued the seller as a third-party beneficiary of the seller's contract with the environmental services company. Judge Weiner denied summary judgment because the record showed the seller knew the environmental study "was commissioned specifically for" the buyer of the property.[63] Judge Bartle aptly offered Judge Weiner's *State Farm* analysis as an example of a court declining "to enforce an express disclaimer of third-party

11

beneficiary rights in a summary judgment setting when it was known that the contract was consummated *specifically* to meet a third-party's needs."[64]

Judge Bartle considered the spectrum of cases and determined he, at the motion to dismiss stage, could not determine whether Mr. Lim was a third-party beneficiary of the purchase agreement, whether recognizing Mr. Lim as a third-party beneficiary was appropriate to effectuate the intent of the parties, and whether Mr. Lim fell into the creditor and donee beneficiaries requirements under Section 302(1)(a) and (b).[65] Judge Bartle gave Mr. Lim an opportunity to attempt to establish the parties intended to give him rights as a third-party beneficiary of the purchase agreement.[66]

We face an entirely different set of facts. There is no evidence the American Cargo-Pilot Franchise Agreement "was consummated *specifically* to meet" 1st Coast Cargo's needs sufficient to decline to enforce Section 25.3. 1st Coast Cargo clings to the side letter agreement approving American Cargo's ownership and operation of the cartage business as evidence of Pilot's intention and awareness served to benefit 1st Coast Cargo. If we accepted 1st Coast Cargo's argument, anyone who benefitted from the cartage service, including people receiving freight delivered by 1st Coast Cargo, would be a third-party beneficiary of the Franchise Agreement. There is no basis for such a leap as a matter of Pennsylvania law or on the undisputed facts presented today.

**B.  Pilot and Maersk may argue the lack of third party beneficiary status.**

1st Coast Cargo argues we must deny summary judgment because Pilot and Maersk waived the affirmative defense of waiver. 1st Coast Cargo construes Pilot and Maersk's argument Section 25.3 disclaims third-party beneficiaries as the defense of contractual waiver which, under Rule 8(c)(1), must be pleaded.

Waiver is "an intentional and voluntary relinquishment of a known right."[67] Section 25.3 of the American Cargo-Pilot Franchise Agreement is not, and could not be, a waiver by 1st Coast Cargo to assert a third-party beneficiary claim. 1st Coast is not a party to the Agreement; it didn't waive anything. Pilot's argument is 1st Coast Cargo failed to state third-party beneficiary claims. It is 1st Coast Cargo's burden to show it is a third-party beneficiary. Pilot and Maersk's defense is 1st Coast is not a third-party beneficiary by virtue of Section 25.3. This is not an affirmative defense contemplated by Rule 8(c).

And, even if it is, our Court of Appeals recognizes "affirmative defenses can be raised by motion, at any time (even after trial), if plaintiff[] suffers no prejudice."[68] 1st Coast Cargo does not argue prejudice by being blind-sided by Pilot and Maersk's argument Section 25.3 disclaims third-party beneficiaries resulting in an inability to take discovery on the issue.[69]

### C.  We may enter partial summary judgment on some but not all claims even if 1st Coast Cargo remains in one other claim.

1st Coast Cargo argues even if Pilot and Maersk's motion for partial summary judgment has merit, granting partial summary judgment will not narrow issues for trial because 1st Coast Cargo's claim for violation of the Florida Deceptive and Unfair Trade Practices Act remains for trial. In granting Pilot and Maersk's motion for leave to file a motion for partial summary judgment, we expressed concern with how, in this bench trial, a motion for partial summary judgment will streamline the issues to be tried.[70] We reminded counsel we are collectively obligated to construe, administer, and employ the Federal Rules of Civil Procedure to secure the "just, speedy, and inexpensive determination of every action and proceeding."[71]

We trust experienced counsel assessed the record and moved for partial summary judgment consistent with Rule 1 and Rule 11. We assessed Defendants' motion under the well-settled Rule

56 standard and enter judgment in favor of Defendants on 1st Coast Cargo's breach of contract and tortious interference with contract claims.

## III. Conclusion

The parties did not adduce evidence of a genuine issue of fact material to the third party beneficiary analysis. We may decide whether 1st Coast Cargo is a third-party beneficiary of the Franchise Agreements as a matter of law.

Summary judgment is entered in favor of Defendants on Counts III and V of the amended Complaint. We proceed on the remaining claims at our scheduled bench trial beginning February 24, 2025.

---

[1] We today amend only to correct a typographical error in the final paragraph of the Conclusion of our January 31, 2025 Memorandum (ECF 64) as detailed in Plaintiff's Motion to clarify (ECF 72) and consistent with our January 31, 2025 Order. ECF 65.

[2] Our Policies require parties moving for relief under Fed. R. Civ. P. 56 include a Statement of Undisputed Material Facts and an appendix to support summary judgment. Defendants Pilot Air Freight, LLC and Maersk Logistics & Services USA, Inc. filed a Motion for partial summary judgment, Memorandum in support of partial summary judgment, Statement of Undisputed Material Facts ("SUMF"), and appendix at ECF 58, 58-2, and 58-3 through 58-4. American Cargo Logistics, Inc., Cavalier Cargo Group, Inc., and 1st Coast Cargo, Inc. opposed the motion, included an Additional Statement of Undisputed Material Facts, and supplemental appendix at ECF 61, 61-1, 61-2 through 61-3. Pilot and Maersk filed a reply brief at ECF 62.

[3] ECF 58-2, Pilot SUMF ¶ 1. Defendant Maersk Logistics & Services USA, Inc. acquired Pilot Air Freight, LLC in May 2022. ECF 43 ¶ 3.

[4] *Id.* ¶ 4.

[5] *Id.* ¶ 5.

[6] *Id.* ¶ 8. Plaintiffs dispute the "characterization of cartage businesses." ECF 61-1, Plaintiffs response to SUMF ¶ 8. This is not a material issue. A "cartage" vendor or cartage company is defined by the American Trucking Associations as a "[c]ompany that provides local (within a town, city or municipality) pick-up and delivery." https://www.trucking.org/sites/default/files/2019-12/Trucking%20Glossary.pdf.

[7] ECF 58-1, Pilot SUMF ¶ 9. Cavalier Cargo performs its own cartage services in Richmond, Virginia and uses cartage company Crossfire Logistics, Inc. for cartage services in Norfolk, Virginia. *Id.* ¶ 15. Crossfire Logistics is not a party in this litigation.

[8] *Id.* ¶ 6; ECF 58-3, Appx. 98-178.

[9] "[American Cargo/Cavalier Cargo] covenants that during the term of this Agreement, except as otherwise approved in writing by [Pilot], [American Cargo/Cavalier Cargo] shall not, either directly or indirectly, for itself, or through, on behalf of, or in conjunction with any person or legal entity: . . . Own, maintain, operate, engage in, be employed by, provide any assistance to, or have any interest in (as owner or otherwise) any freight transportation business or any business that offers services or products which are the same as or similar to the services and products being offered by the Franchised Business, unless approved in writing by [Pilot]." ECF 58-3, Appx. 130, Franchise Agreement at §§ 17.2, 17.2.3.

[10] "Except as expressly provided to the contrary herein, nothing in this Agreement is intended, nor shall be deemed, to confer upon any person or legal entity other than [American Cargo], [Pilot], [Pilot's] officers, directors, shareholders, agents, and employees, and such of [Pilot's] successors and assigns as may be contemplated by Section 14 hereof, any rights or remedies under or by reason of this Agreement." ECF 58-3, Appx. 137, Franchise Agreement at § 25.3. Section 14 of the Franchise Agreement pertains to transfers or assignments of the Agreement. *Id.*, Appx. 121.

[11] ECF 58-3, Appx. 29, ¶ 51.

[12] *Id.*

[13] ECF 58-1, Pilot SUMF ¶ 6; ECF 61-3, Appx. 1028-1036.

[14] "WHEREAS, [Pilot] and [American Cargo Logistics] are parties to a Pilot Air Freight Corp. Franchise Agreement dated March 28, 2011, as amended by the side letters listed on Schedule A and annexed hereto, for the operation of a Pilot Air Freight franchise in Jacksonville, Fla. (JAX) ("the Franchise Agreement")." ECF 61-3, Appx. 1028.

[15] ECF 61-3, Appx. 1033-1036.

[16] *Id.*, Appx. 1034. The parties do not explain how this side letter affects our analysis as they swear non-franchisee Mr. Loux owns 1st Coast Cargo; the side letter and Franchise Agreement address franchisee American Cargo which does not own 1st Coast Cargo. Query whether the side letter affects our analysis at all given the undisputed ownership and no contrary evidence.

The second side letter exempts Mr. Loux's management team from an initial training program for franchisees and the third side letter confirms Mr. Loux's "premises" meets or is exempt from operating requirements. *Id.*, Appx. 1035-36.

[17] ECF 58-3, Appx. 5, ¶ 2.d; Appx. 74, ¶ 53.

[18] *Id.*, Appx. 75, ¶ 61. The parties refer to these locations as "stations."

[19] ECF 1.

[20] ECF 58-3, Appx. 12-64, Amended Complaint.

[21] *Id.*, Appx. 66-96, Answer to Amended Complaint.

[22] *Id.*, Appx. 49-55, 56-58 (Amended Complaint at Counts I, II, IV).

[23] *Id.*, Appx. 60-61 (Amended Complaint at Count VI).

[24] *Id.*, Appx. 61-63 (Amended Complaint at Count VII).

[25] *Id.*, Appx. 55-56, 58-60, 60-61 (Amended Complaint at Counts III, V, VI).

[26] ECF 43, Affirmative Defense No. 1.

[27] ECF 58. Summary judgment is proper when "the movant shows that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(a). "Material facts are those 'that could affect the outcome' of the proceeding, and 'a dispute about a material fact is 'genuine' if the evidence is sufficient to permit a reasonable jury to return a verdict for the non-moving party.'" *Pearson v. Prison Health Serv.*, 850 F.3d 526, 534 (3d Cir. 2017) (quoting *Lamont v. New Jersey*, 637 F.3d 177, 181 (3d Cir. 2011)). "Summary judgment is appropriate only if, after drawing all reasonable inferences in favor of the non-moving party, there exists 'no genuine dispute as to any material fact' and the movant 'is entitled to judgment as a matter of law.'" *Moyer v. Patenaude & Felix, A.P.C.*, 991 F.3d 466, 469 (3d Cir. 2021) (quoting *Shuker v. Smith & Nephew, PLC*, 885 F.3d 760, 770 (3d Cir. 2018)). We do not weigh evidence or make credibility determinations. *Peroza-Benitez v. Smith*, 994 F.3d 157, 164 (3d Cir. 2021) (quoting *Baloga v. Pittston Area Sch. Dist.*, 927 F.3d 742, 752 (3d Cir. 2019)). "The party seeking summary judgment 'has the burden of demonstrating that the evidentiary record presents no genuine issue of material fact.'" *Parkell v. Danberg*, 833 F.3d 313, 323 (3d Cir. 2016) (quoting *Willis v. UPMC Children's Hosp. of Pittsburgh*, 808 F.3d 638, 643 (3d Cir. 2015)). If the movant carries its burden, "the nonmoving party must identify facts in the record that would enable them to make a sufficient showing on essential elements of their case for which they have the burden of proof." *Willis*, 808 F.3d at 643 (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)). "If, after adequate time for discovery, the nonmoving party has not met its burden, pursuant to Federal Rule of Civil Procedure 56, the court must enter summary judgment against the nonmoving party." *Id.* (citing *Celotex*, 477 U.S. at 322–23).

[28] ECF 61.

[29] Both sides agree Pennsylvania law applies to this issue based on the Pennsylvania choice of law provision in the Franchise Agreement. ECF 58-3, Appx. 137, § 26.1.

[30] *Spires v. Hanover Fire Ins. Co.*, 70 A.2d 828 (Pa. 1950), *overruled in part by Guy v. Liederbach*, 459 A.2d 744 (Pa. 1983).

[31] *Scarpitti v. Weborg*, 609 A.2d 147, 149-50 (Pa. 1992) (citing *Guy*, 459 A.2d 744).

[32] *Id.*

[33] *Id.* at 150 (citing RESTATEMENT (SECOND) OF CONTRACTS, § 302 (1979)) (emphasis added).

[34] *Id.* at 150-51 (quoting *Guy*, 459 A.2d at 751).

[35] *Id.* at 150.

[36] *Id.* at 150-51.

[37] *Medevac MidAtlantic, LLC v. Keystone Mercy Health Plan*, 817 F. Supp. 2d 515, 527 (E.D. Pa. 2011) (citing *Scarpitti*, 609 A.2d at 150-51).

[38] *Guy*, 459 A.2d at 751.

[39] *Medevac MidAtlantic, LLC*, 817 F. Supp. 2d at 528 (collecting cases).

[40] *Id.* (quoting *Guy*, 459 A.2d at 751).

[41] ECF 58-3, Appx. 137, Franchise Agreement at § 25.3.

[42] *Baim v. Dukart*, 659 F. Supp. 3d 549, 555 (E.D. Pa. 2023) (citations omitted).

[43] *Id.* (citing *Kmart of Pa., L.P. v. MD Mall Assocs., LLC*, 959 A.2d 939, 944 (Pa. Super. Ct. 2008)).

[44] *Id.* (citing *Hutchinson v. Sunbeam Coal Corp.*, 519 A.2d 385, 388 (Pa. 1986)).

[45] *See PennEnergy Res., LLC v. Winfield Res., LLC*, 301 A.3d 439, 460-61 (Pa. Super. Ct. 2023) (enforcing parties' contractual third-party beneficiary disclaimer); *Ira G. Steffy & Son, Inc. v. Citizens Bank of Pa.*, 7 A.3d 278, 287-88 (Pa. Super. Ct. 2010) (parties' agreement did not show intent to create a third-party beneficiary to the agreement and disclaimer provision demonstrated the parties specifically rejected the idea subcontractors are third-party beneficiaries to construction contract); *Thomas v. TransCore, L.P.*, No. 21-1040, 2024 WL 4820782, at *2 (M.D. Pa. Nov. 18, 2024) (dismissing third-party beneficiary claim under Section 302 intended beneficiary theory where contract expressly disclaimed third-party beneficiaries) (collecting cases); *In re NCB Mgmt. Servs., Inc. Data Breach Litig.*, --- F. Supp. 3d ---, No. 23-1236, 2024 WL 4160349, at *7-*8 (E.D. Pa. Sept. 11, 2024) (dismissing third-party beneficiary claims under Section 302 of the Restatement because the contract's express disclaimer demonstrated the parties "otherwise agreed" there are no third-party beneficiaries to the contract) (collecting cases); *Medevac MidAtlantic, LLC*, 817 F. Supp. 2d at 528 (dismissing third-party beneficiary's breach of contract claim because the contract expressly disclaimed an intention to create third-party beneficiaries) (collecting cases).

---

[46] *Medevac MidAtlantic, LLC*, 817 F. Supp. 2d at 529-30 (collecting cases).

[47] *Id.* at 530.

[48] *PennEnergy Res., LLC.*, 301 A.3d at 460.

[49] *Id.* (quoting *McGaffic v. City of New Castle*, 74 A.3d 306, 312 (Pa. Commw. Ct. 2013)). The Pennsylvania Commonwealth Court in *McGaffic* recognized the validity of third-party beneficiary disclaimers. But 1st Coast Cargo still cited the *McGaffic* case to support its intended beneficiary claim under Section 302 of the Restatement. *See* ECF 61 at 10. In addition to the recognition under Pennsylvania law of the validity of third-party beneficiary disclaimers, the Commonwealth Court's analysis in *McGaffic* is factually distinguishable. Owners of a commercial building brought a claim and obtained a judgment against a city's redevelopment authority after the building lost value in the city's urban renewal program. The redevelopment authority could not pay the judgment, so the building owners sought to hold the city responsible for the judgment as the third-party beneficiaries of a contract between the city and the redevelopment authority. The contract between the city and the redevelopment authority confirmed an agreement for the city to be financially responsible for the redevelopment authority's actions: "***Any costs or obligations*** incurred in connection with the said [renewal] program ***with respect to claims which are disputed, contingent, unliquidated or unidentified***, and for the payment of which insufficient program funds have been reserved, as set forth in the next above paragraph, ***shall be borne by the [city]***." *McGaffic*, 74 A.3d at 308 (emphasis added by the court). Pennsylvania's Commonwealth Court concluded the city assumed liability for an award resulting from the redevelopment authority's actions and the contract confirmed "an express intention to provide for the City's payment of claims to third-parties where the Redevelopment Authority lacks the funds to do so." *Id.* at 313. The Commonwealth Court rejected the city's argument the contract did not create third-party beneficiary rights because the contract did not specifically name the beneficiary. *Id.* at 313-14. The Commonwealth Court examined the language of the contract's liability section and concluded the contract clause "expressly creates rights in persons that suffer damages as a result of the actions taken under a contract between other parties." *Id.* at 314. We have no such language here. The analysis does not guide us.

[50] *In re NCB Mgmt. Servs., Inc. Data Breach Litig.*, 2024 WL 4160349 at *1.

[51] *Id.* at *8.

[52] *Id.* at *7 (collecting cases).

[53] *Scarpitti*, 609 A.2d at 149.

[54] ECF 61 at 9.

[55] ECF 61-1, Plaintiffs SUMF ¶ 8; ECF 61-2, Appx. 707-12.

[56] ECF 58-3, Appx. 137.

[57] *Id.*, Appx. 59.

[58] ECF 61-3 at Appx. 1047-50.

[59] *Burks v. Fed. Ins. Co.*, 883 A.2d 1086, 1088 (Pa. Super. Ct. 2005) (quoting *Spires*, 70 A.2d at 830-31).

[60] No. 13-1385, 2013 WL 5272845 (E.D. Pa. Sept. 18, 2013).

[61] *Id.* at *5.

[62] *Id.* (citing *State Farm Mut. Ins. Co. v. HHS Assocs.*, No. 93-5943, 1995 WL 739703 (E.D. Pa. Dec. 1, 1995)).

[63] *Id.*

[64] *Id.* (citing *State Farm Mut. Ins. Co.*, 1995 WL 739703 at *1) (emphasis added). 1st Coast Cargo cited the *Lim* case in its opposition to summary judgment. ECF 61 at 15. In summarizing the case in a parenthetical, counsel omitted the word "specifically."

[65] *Id.*

[66] *Id.* at *6 (citing *Scarpitti*, 609 A.2d at 150-51 and *Medevac MidAtlantic*, 817 F. Supp. 2d at 530). We also decline to follow the factually distinguishable *Twin City Constr. Co. of Fargo, N.D. v. ITT Indus. Credit Co.*, 358 N.W. 716 (Minn. Ct. App. 1984) cited by 1st Coast Cargo. In *Twin City*, the Minnesota Court of Appeals affirmed summary judgment in favor of the plaintiff construction company asserting a third-party beneficiary claim under a loan agreement. The plaintiff construction company contracted with a developer to build a hotel. After the construction company completed $600,000 worth of work, the developer failed to make progress payments to the construction company for its expended work. The construction company obtained a mechanic's lien for its work. The developer then secured a rescue loan from a credit company. The credit company demanded the release of the construction company's mechanic's lien and required the construction company to subordinate its interest pending construction. The construction company and developer signed a subordination agreement where the construction company agreed to complete the project despite a default by the development or any payments due and agreed it would not be entitled to any lien rights on its behalf or on the behalf of any subcontractors. With the subordination agreement in place, the lender finalized the loan agreement with the developer. The lender agreed to commit monies specifically for construction costs to complete the project to be paid directly to the construction company and agreed to take an assignment of the original construction contract between the construction company and developer. The agreement between the lender and developer disclaimed third-party beneficiary rights. *Id.* at 716.

The lender made payments to the construction company throughout construction but refused the final payment to the construction company because the developer defaulted on the loan agreement. The construction company sued the lender seeking the final payment. The lender defended, arguing

the construction company was not a third-party beneficiary of the loan agreement because of the disclaimer. The trial court granted the construction company summary judgment and the lender appealed. The Minnesota Court of Appeals affirmed the judgment, concluding the circumstances and documents clearly showed the construction company to be an intended beneficiary of the loan agreement because the lender demanded, as a pre-condition of the loan, the construction company to vacate its lien and subordinate its interest during construction and in return, the lender agreed it would make progress payments as the work commenced. *Id.* at 718-19. The court concluded the construction company is an intended beneficiary of the loan agreement regardless of the disclaimer. *Id.* The facts in *Twin City* show the construction company gave up a lien and subordinated its rights as a condition for the new loan to complete the project. The construction company completed the project but the lender would not make payment which it promised to do under the loan agreement. It is not a leap to conclude the construction company is an intended beneficiary of the loan agreement despite the disclaimer; the lender agreed to pay the construction company directly for completed work. We do not have the same facts. The side letter shows only Pilot's approval for American Cargo to operate 1st Coast Cargo where American Cargo could not do otherwise.

[67] *Commw. v. Lucarelli*, 971 A.2d 1173, 1179 (Pa. 2009) (quoting *United States v. Goldberg*, 67 F.3d 1092, 1099 (3d Cir. 1995)).

[68] *Feingold v. State Farm Mut. Auto. Ins. Co.*, 629 F. App'x 374, 376 (3d Cir. 2015) (quoting *Cetel v. Kirwan Fin. Grp., Inc.*, 460 F.3d 494, 506 (3d Cir. 2006)).

[69] We recognize our December 23, 2024 Order highlighting the lack of the waiver defense. ECF 52. But 1st Coast Cargo did not follow up on our observation. It offers no prejudice. It knew of the defense raised in the litigation. It offers no evidence of losing rights in being unable to learn of the existence of Section 25.3.

[70] ECF 52.

[71] Fed. R. Civ. P. 1.